IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIA JONES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC. | : | NO. 13-4316 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                                                    March 19, 2015

      The Honorable J. William Ditter has referred a sanctions motion to the undersigned in this employment discrimination/retaliation case. Doc. 91.[1] In the motion (Doc. 37), Defendant[2] seeks to recover fees and costs associated with responding to Plaintiff's motion to quash the deposition of Plaintiff's partner Desmond Jackson (Doc. 34). I ordered Defendant to provide a list of costs and fees associated with the motion to quash and scheduled a hearing for March 9, 2015, at which I invited Plaintiff's counsel to discuss the sanctions motion and offer any mitigating evidence. Doc. 96. That hearing took place as scheduled, and I now grant Defendant's motion in part.

---

[1] The Honorable Edmund V. Ludwig, to whom the case was originally assigned, granted the motion for sanctions and referred disposition to me in March of 2014. See Doc. 49. However, Plaintiff subsequently filed a motion for reconsideration which impeded my ability to address disposition of the sanctions. In the interim, the matter was transferred from Judge Ludwig's docket to Judge Ditter's. Judge Ditter denied the motion for reconsideration and recommitted the matter to me on January 29, 2015. See Doc. 91.

[2] Since the time of the filing of the original motion, Judge Ditter has dismissed two individual defendants from the action. See Doc. 93. Therefore, throughout this Memorandum, I will refer to the single remaining defendant.

I.      **Factual Background for the Sanctions Motion**

Some background and a timeline are necessary to give context to the motion, all events occurring in 2014.  During the first day of Plaintiff's deposition on February 20, she testified that she lived with her two children and their father, Mr. Jackson.  See Doc. 35-1 at 3. [3]  When specifically asked "Are you married to Mr. Jackson?", she responded, "No, I am not."  Id.  Defendants thereafter sought to depose Mr. Jackson, and inquired of Plaintiff's counsel if he would accept service of the deposition subpoena, which counsel declined.  See Doc. 34-2 at 1-2 (email exchange).  On February 28, before the deposition subpoena was issued, Plaintiff's counsel filed a motion to quash the subpoena to be directed to Mr. Jackson or for a protective order asserting, for the first time, a spousal privilege.  See Doc. 34 at 1. [4]  In an attached declaration, Plaintiff's counsel declared that Mr. Jackson "is [Plaintiff's] spouse."  See Doc. 34-5 at 1 ¶ 11.  When defense counsel sought clarification of Plaintiff's marital status in a March 3 email, Plaintiff's counsel responded by email "I will have to ask her."  Doc. 36-1 at 2.  The next day, Plaintiff's counsel forwarded Plaintiff's email response in which she stated "Desmond and I have

---

[3] All pinpoint citations are to the court's ECF pagination.

[4] Technically, a motion to quash was an inappropriate mechanism to present a challenge based on the spousal privilege.
> If a spousal privilege applies to deposition testimony, quashing a subpoena is not the proper remedy, because the privilege may only be asserted as to specific testimony.  The Third Circuit has stated that "any marital privilege can be sufficiently protected through traditional objections made at the deposition."

Carroll v. Student Transp., Inc., Civ. No. 10-1439, 2011 WL 382563, at *3 (E.D. Pa. Feb. 7, 2011) (quoting Murphy v. Fed. Ins. Co., 206 Fed. Appx. 143, 146-47 (3d Cir. 2006)).

2

been living together for years and have 2 children together but legally, on paper, we are not married. . . . We were planning to get married before I got fired from [Defendant]." Id. These materials were included in Defendant's response and supplemental response to the motion to quash. Docs. 35 & 36. On March 7, Judge Ludwig denied the motion to quash. Doc. 39.

Because the basis for the motion to quash was an assertion of the spousal privilege, and Plaintiff had twice stated in her counsel's presence (at her deposition and by email) that she was not married, Defendant filed a motion for sanctions on March 6. Doc. 37. In his March 9 response to the motion for sanctions, Plaintiff's counsel, for the first time, asserted that Plaintiff and Mr. Jackson were common law spouses. Doc. 38 at 2.[5] However, he failed to mention any factual or legal basis for a common law marriage under Pennsylvania law, whether by an exchange of "verba in praesenti" or cohabitation and reputation.[6] In a supplemental filing, counsel included a March 8 declaration from

---

[5] Plaintiff's counsel first represented to defense counsel that Plaintiff and Mr. Jackson were spouses "in the common law sense" in a March 6 email, which defense counsel later attached to his itemization of costs and fees. Doc. 104-1 at 22.

[6] Prior to January 2005,
> [a]common law marriage [was] created [in Pennsylvania] by the exchange of verba in praesenti, the exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created. The party alleging a common law marriage has the heavy burden of proving its existence. He or she must produce clear and convincing evidence of the exchange of verba in praesenti.

Int'l Painters and Allied Trades Indus. Pension Fund v. Calabro, 312 F. Supp.2d 697, 701 (E.D. Pa. 2004) (internal citations omitted). The party claiming a common law marriage who shows constant cohabitation and a reputation of marriage raises a rebuttable presumption of marriage. Faber v. TGI-Friday's, Inc., 148 F. Supp.2d 556, 558 (E.D. Pa.

3

Plaintiff in which she stated that her relationship with Mr. Jackson is "marital in nature," and that a year prior to the birth of her son in January 2005, she and Mr. Jackson agreed to consider each other and behave in public as husband and wife. Doc. 48-3 at 1.

## II. Legal Standard

Defendant brought its sanctions motion pursuant to 28 U.S.C. § 1927, which states:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Third Circuit has held that "a finding of willful bad faith on the part of the offending lawyer is a prerequisite" to the imposition of sanctions under section 1927. In re Prudential Ins. Co. Am.Sales Practice Litig. Agent Actions, 278 F.2d 175, 181 (quoting Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir. 1991)). "[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than a misunderstanding, bad judgment, or well-intentioned zeal." Grider v. Keystone Health Plan Cent., Int., 580 F.3d 119, 142 (3d Cir. 2009) (quoting LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C. XXIII, 287 F.3d 279, 289 (3d Cir. 2002)).

---

2001). Common law marriage was abolished prospectively in Pennsylvania as of January 1, 2005. 23 Pa. C.S.A. § 1103.

### III.    Discussion

#### A.    Whether to Sanction

The critical question here is whether, at the time he filed his motion to quash, Plaintiff's counsel had a good faith basis to assert that his client and Mr. Jackson were married. I conclude that, although his motion may have been motivated to protect his client from embarrassment and in an effort not to disturb her relationship with Mr. Jackson, there can be no doubt that it was without proper foundation. In the motion to quash, Plaintiff's counsel asserted that Mr. Jackson and Plaintiff were spouses, without providing any factual or legal foundation, despite the fact that just days before Plaintiff had testified without equivocation that she was not married.[7] Once a question was raised as to the basis for the claimed marriage, he continued to rely on his own bald assertion despite contrary evidence. Even at the recent hearing, Plaintiff's counsel declined to acknowledge the possibility that his assertion of a spousal privilege might appear out of order or require explanation in light of his client's testimony.

Offered an opportunity to explain his reasons for asserting the privilege at the recent hearing, Plaintiff's counsel could not identify a date on which the couple exchanged verba in praesenti and did not rely on that as the basis for the marriage. Rather, he explained that he filed the motion based on his observations of Plaintiff and

---

[7]I reject counsel's attempt to equivocate by using the term "spouse" rather than "husband" and "wife." If a person is married by virtue of Pennsylvania's recognition of marriage under the common law, such person has all the same legal rights as someone married by license. Knauer v. Knauer, 470 A.2d 553, 564 (Pa. Super. 1983) ("Parties to a common law marriage are legally married in Pennsylvania and can, by virtue of their status as spouses, make claims to property even absent an agreement.").

Mr. Jackson and their interactions with one another and their children in their home when he visited with them to retrieve documents. However, the fact that Plaintiff and Mr. Jackson are in a long-term relationship, living together with their children, is insufficient to establish a marital relationship under Pennsylvania law. Counsel's explanation did not take into account that common law marriage requires a mutual and expressed understanding of the legal relationship.

The strongest evidence that Plaintiff and Mr. Jackson were common law spouses came in Plaintiff's March 8 declaration in which she stated that, prior to the birth of her son in January 2005, she and Mr. Jackson had "agreed to consider each other and to behave in public as husband and wife." Doc. 48-3 at 1. However, this information, even if it supported the existence of a common law marriage, was admittedly not known to counsel when he filed the motion to quash nine days earlier.[8]

Moreover, Plaintiff's other statements and actions belie her characterization. During her second day of deposition on March 21, with her counsel present, Plaintiff

---

[8]Plaintiff's counsel also submitted a second declaration of his own, dated March 21, in which he stated: " I asked Ms. Jones, prior to filing and as I was drafting the motion to quash, for how long she had been in a committed relationship with Mr. Jackson and whether she considered that a marriage. Ms. Jones said this relationship had been deep and loving since she was at least 19 years old and that they each did consider that the other was his or her spouse." Doc. 48-4 at 1 ¶ 4. This declaration does not address either key element of common law marriage, namely whether the parties exchanged verba in praesenti or constant cohabitation and reputation prior to January 2005. Additionally, Plaintiff's counsel represented at the sanctions hearing that when he visited his client's home a few days before the hearing, the superintendent of the building referred to Jones and Jackson as husband and wife. This information was not known to Plaintiff's counsel at the relevant time, and while it may have supported the existence of a common law marriage together with other evidence, such other evidence was lacking.

admitted that she identified herself as single in her September 2005 custody complaint against Jackson, and when asked "So you were not married in 2005?", responded "We were not living together in 2005." Pl. Dep. 3/21/14 at 154. Thus, she did not consider herself to be married in 2005, and apparently believed that living together was the touchstone of being married under the common law. Her counsel intervened to inquire whether she understood the question, and she added "We were together in a committed relationship," and answered defense counsel's further question by saying "I considered us in a domestic partnership . . . but not legally." Id. at 155. This again does not clarify the existence of a common law marriage. She also testified that she did not identify herself as married on tax returns or medical assistance applications. Id. at 155-56.[9]

As noted, on the two occasions in this litigation when directly asked if she was married, Plaintiff answered that she was not. Even if there were a basis to claim a presumption that she and Mr. Jackson had a common law marriage based on their years of cohabitation and reputation, the presumption was strongly rebutted by Plaintiff's words and actions. Therefore, Plaintiff's counsel did not have a good faith basis to file the motion to quash, and a sanction under section 1927 is appropriate as found by Judge Ludwig.[10]

---

[9] The only evidence offered by Plaintiff's counsel during the sanctions hearing concerned Mr. Jackson's religious objection to marriage. Because Plaintiff's counsel agreed that he had no knowledge of this objection at the time the motion to quash was being litigated, I sustained the defense objection to the relevance of the proffered evidence.

[10] I emphasize that I do not decide whether or not Plaintiff and Mr. Jackson could establish the existence of a common law marriage if the matter were being fully litigated.

B.  The Amount of the Sanction

"The appropriateness of the sanction is a matter entrusted to the discretion of the district court." In re Prudential, 278 F.2d 175, 181.[11]

> To properly exercise this discretion, the district court must balance the equities between the parties by looking to mitigating factors and the circumstances surrounding the case. The Court may award attorney fees whenever overriding circumstances indicate the need for such a recovery. On the other hand, the Court may choose not to award attorney fees or may reduce the attorney fees awarded if, in balancing the equities, the Court determines that the interest of justice would be better served by such action.

Loftus v. SE Pa. Transp. Auth., 8 F. Supp.2d 458, 463 (E.D. Pa. 1998) (quoting Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986)).

Utilizing the lodestar calculation, defense counsel seeks $15,091.03 in fees and costs related to the litigation of the motion to quash, the sanctions motion, and the motion for reconsideration. See Doc. 100.[12] Plaintiff's counsel challenges the amount on three bases: (1) the lodestar is an improper basis for sanctions, (2) defense counsel asked

---

Rather, this decision is limited to whether Plaintiff's counsel was acting in good faith when he asserted spousal privilege in the motion to quash.

[11]Although Defendant sought sanctions against both Plaintiff and her counsel, see Doc. 37, the Third Circuit has held that section 1927 "is designed to discipline counsel only and does not authorize imposition of sanctions on the attorney's client." Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa., 103 F.3d 294, 297 (3d Cir. 1996).

[12]In an email to Plaintiff's counsel on March 7, prior to filing the sanctions motion, defense counsel estimated his firm's fees as $7,700 ($4,455 relating to the motion to quash and $3,245 relating to the motion for sanctions). See Doc. 104-1 at 22. At the recent hearing, defense counsel represented that this number was based on a preliminary analysis and did not include all of counsel's time as of that date.

8

improper questions during Plaintiffs' deposition prompting the motion to quash to protect Plaintiff, and (3) he is not in a position to pay $15,000.[13] See Doc. 102.

Although Plaintiff's counsel contends that the lodestar is an inappropriate basis on which to measure sanctions, he is incorrect. The statute refers to the payment of excess costs, expenses, and attorneys' fees. 28 U.S.C. § 1927. The courts of this circuit begin the calculation of such sanctions with the lodestar. See Loftus, 8 F. Supp.2d at 463 (citing Matthews v. Freedman, 128 F.R.D. 194, 207 (E.D. Pa. 1989) ("In calculating the amount of attorney fees in § 1927 cases, courts have generally applied the loadstar [sic] method."); Murphy v. Housing Auth. & Urban Redev. Agency, 158 F. Supp.2d 438, 452 (D.N.J. 2001); Boykin v. Bloomsburg Univ., 905 F. Supp. 1335, 1347-48 (M.D. Pa. 1995); Campana v. Muir, 615 F. Supp. 871, 880 (M.D. Pa. 1985).

Plaintiff's counsel has focused much of his argument in briefing the various interrelated motions to make the point that he filed the motion to quash to protect Plaintiff from further embarrassment and irrelevant inquiries. See Docs. 34 at 3; 34-1 at 1; 38 at 4; 48-1 at 3, 11-12; 53-1 at 2, 9; 102 at 1-3, 12-13. Specifically, in the motion to quash, counsel indicated that he expected the defense to question Mr. Jackson about his alleged assault of Plaintiff and about prior abortions that Plaintiff had. Doc. 34-1 at 3. However, having reviewed the Amended Complaint and discovery, I conclude that these were relevant inquiries. In the Amended Complaint, Plaintiff alleged that as a direct

---

[13]In response to the certification of costs and fees, Plaintiff's counsel maintains that the fact that his client and Mr. Jackson are common law spouses should weigh against sanctions. Doc. 102. I have already rejected this argument in the prior discussion.

result of Defendant's actions, she has suffered, among other things, depression, mental anguish, disruption of her personal life, and loss of enjoyment of the pleasures of life. See Doc. 21 ¶ 109.  These allegations put her emotional state into issue, and as her partner Mr. Jackson could fairly be expected to have relevant information as to her emotional state during the relevant time period.  In her answers to interrogatories, Plaintiff stated that her distress manifested itself in a series of angry conversations with her partner.  See Doc. 35-1 at 27.  This allegation put her emotional relationship with Mr. Jackson directly into issue, and merited defense investigation.  Also, inquiry into these sensitive topics was relevant to determine if other stressors in Plaintiff's life could be responsible for her alleged depression, mental anguish, and disruption of her personal life.  Although Plaintiff was understandably upset by this questioning, there was nothing improper with defense questioning of Plaintiff or Mr. Jackson regarding theses subjects.[14]  Indeed, at the recent hearing, Plaintiff's counsel withdrew his objections to this line of questioning.

I will now turn to equitable considerations, which are always a factor in section 1927 sanctions.  See Lightning Lube, Inc. v. Witco Corp., 144 F.R.D. 662, 670-71 (D.N.J. 1992) (quoting Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1996) ("A trial court may, in its discretion, refuse to assess attorneys' fees under Section 1927 even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless

---

[14]Plaintiff's counsel also performed a line-by-line analysis of the certification of costs and fees and argues that some of the work was not performed at all, double-billed, over-inflated, or could have performed by a lesser-paid employee.  See Doc. 102 at 9-12.  Because I conclude that equitable considerations should diminish the sanction substantially, I do not embark on such an analysis.

determines that an award in a particular case would not serve the interests of justice."). Both in his response to defense counsel's certification of costs and fees and at the hearing, Plaintiff's counsel explained that he is not in a position to pay a $15,000 sanction.

I recognize that Plaintiff's counsel is in a small firm and that part of his practice is defending the rights of employees, which is not always a significant money-making enterprise. I also credit counsel's statement that a sanction of the amount sought by Defendant would "profoundly affect . . . his ability to run a practice." Doc. 102 at 3. However, the court cannot condone counsel's filing of the motion to quash in the face of his client's sworn testimony that she was not married and without any investigation into the factual and legal merit of his statement. Considering the time and effort defense counsel expended on the motion to quash and the subsequent related filings, and the equitable considerations of the size and nature of Plaintiff's counsel's practice, I conclude that a sanction of $4,500 is equitable.

An appropriate Order follows.