**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KHALIA JONES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 13-4316** |
| | : | |
| **THOMAS JEFFERSON UNIVERSITY** | : | |
| **HOSPITALS, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM</u>

**Tucker, J.** **October 29, 2019**

This case arises from the termination of Khalia Jones ("Plaintiff") by Thomas Jefferson University Hospital ("Defendant"). Plaintiff claims that she was fired because she was pregnant and disabled. Before the Court is Defendant's Motion for Summary Judgment (ECF No. 65). In analyzing the Motion for Summary Judgment, the Court is also considering Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 69), Defendant's Reply (ECF No. 72), Plaintiff's Reply (ECF No. 112), and Defendant's Sur-Reply (ECF No. 119). Upon consideration of the Parties' submissions and for the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

Plaintiff's Motion for Relief and Leave to Supplement the Record (ECF No. 125) is also before the Court. Plaintiff's Motion for Relief and Leave to Supplement the Record is hereby **DENIED**.

# I.        FACTS AND PROCEDURAL HISTORY

Plaintiff began working at the Defendant's Center City Campus as an endoscopy technician in October 2007.  Am. Compl. ¶ 14, ECF No. 22; Answer ¶ 14, ECF No. 56.  Plaintiff's responsibilities as an endoscopic technician included, among other tasks, preparing procedure rooms, assisting physicians during procedures, and cleaning and sterilizing instruments used during procedures.  Def.'s Mot. Summ. J., Ex. 1, Pl. Dep. Vol. I 11:20–12:6, ECF No. 65.  Endoscopic technicians are sometimes expected to assist with fluoroscopic procedure — a type of medical imaging that uses x-rays, thereby exposing patients and potentially medical personnel to radiation.  During her tenure as an endoscopic technician, Plaintiff was supervised by Nurse Manager, Barbara Alpini ("Alpini").  Am. Compl. ¶ 19; Def.'s Mot. Summ. J., Ex. 2 ¶ 2.

On January 22, 2010, doctors informed Plaintiff that she was approximately six weeks pregnant.  Def.'s Mot. Summ. J., Ex. 3, JUP 20.  In late January 2010, Plaintiff informed Alpini that she was pregnant and asked to no longer be assigned to participate in fluoroscopies so that she could avoid exposure to radiation.  Def.'s Mot. Summ. J., Ex. 2 ¶ 15, Ex. 3 ¶ 27–28.  Alpini did not guarantee that Plaintiff would not have to assist in some procedures that involved radiation, based on staffing needs.  Def.'s Mot. Summ. J., Ex. 2 ¶ 15; Pl.'s Resp., Ex. F, 3–4, ECF No. 69.  Plaintiff contends that in the ensuing months she was forced to perform "daily radiation-intensive endoscopy procedures," despite her request to not perform procedures involving radiation.  Am. Compl. ¶ 61.  Plaintiff further alleges that when assisting with procedures involving radiation, her supervisors did not provide her with a larger protective gear to cover her growing abdomen.  Am. Compl. ¶ 53–56.  As a result, Plaintiff claims to have experienced debilitating anxiety, terror, emotional distress, and depression.  Am. Compl. ¶¶ 69,

82.  Defendant, on the other hand, contends that Plaintiff did not assist with any fluoroscopic procedures after January 1, 2010.  Def.'s Mot. Summ. J., Ex. 2 ¶ 18; Ex. 5 ¶ 3, Ex. 6 ¶ 5.

The events between Plaintiff informing Defendant of her pregnancy and her ultimate termination on April 1, 2010 are contested.  Defendant states that on March 24, 2010, Plaintiff was assigned to the cleaning room where she was responsible for cleaning equipment used in procedures and documenting the cleaning and sterilization of the equipment.  Def.'s Mot. Summ. J. 13.  According to Defendant, on March 25, 2010, two endoscopic technicians informed Alpini that the procedure equipment's cleaning solution had failed testing and that there was no documentation regarding the efficacy of the cleaning solution from the previous day, March 24.  Def.'s Mot. Summ. J. 13.  Plaintiff blames the lack of documentation from March 24 on her being reassigned from the cleaning room to a procedure by the charge nurse on duty, Cathy Walker ("Walker").  Def.'s Mot. Summ. J., Ex. 1, Pl. Dep. Vol I, 158:8–22.  Plaintiff asserts that she had tested the cleaning solution, but did not document the testing.  Def.'s Mot. Summ. J. 14.  According to Defendant, Walker told Alpini that Plaintiff was not reassigned on March 24.  Def. Mot. Summ. J. 14.  In addition, Defendant asserts that business records corroborate its account and indicate that Plaintiff did not participate in any procedures on March 24.  Def.'s Mot. Summ. J. 13.  Hospital policy requires that business records document all personnel working on procedures.  Def. Mot. Summ. J. 13.

Following the conflicting accounts of Plaintiff's work assignment on March 24, Alpini held a meeting with both Plaintiff and Walker on March 30, during which there was a confrontation between Plaintiff and Alpini.  Def.'s Mot. Summ. J. 13.  Plaintiff believed Alpini was giving her a hard time because of Plaintiff's unwillingness to perform fluoroscopic procedures.  Def.'s Mot. Summ. J. 13.  Following the confrontation, Alpini instructed Plaintiff to

speak with Human Resources, which was located in another building on Defendant's campus. Def.'s Mot. Summ. J. 13. Plaintiff claims she went to Human Resources and spoke with Randy McLaughlin ("McLaughlin") on March 30. Pl.'s Resp. 42. Plaintiff further contends that when she returned from Human Resources near the end of her shift, she sought the permission of the managing nurse, Marilyn LeBron ("LeBron"), prior to leaving work about ten minutes before the scheduled end of her shift. Am. Compl. ¶ 94. According to Defendant, Alpini was told that Plaintiff never visited McLaughlin in Human Resources on March 30, and that Plaintiff did not return to work that day. Def.'s Mot. Summ. J. 15. Alpini therefore concluded that Plaintiff opted to leave work on March 30 after their contentious meeting. Def.'s Mot. Summ. J. 15. As a result, Defendant suspended Plaintiff as an employee the following day, March 31, 2010, and formally terminated her employment on April 1, 2010. Def.'s Mot. Summ. J., Ex. 2 ¶ 35.

On July 25, 2013, Plaintiff commenced this action in the Eastern District of Pennsylvania. Compl., ECF No. 1. Plaintiff filed her First Amended Complaint on December 9, 2013 which sets forth the claims currently pending before the Court. Am. Compl. Plaintiff makes claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"), the Pregnancy Discrimination Act ("PDA"), and the Pennsylvania Human Relations Act ("PHRA"). Am. Compl. 24–33. Plaintiff also initially named Alpini and Dr. Anthony DiMarino, a physician who oversaw medical care in the Defendant's endoscopy unit, as Defendants. Am. Compl. 24–33. The Court dismissed Alpini and DiMarino as Defendants in this case on February 6, 2015. Order, ECF No. 94. On April 18, 2014, Defendant filed the instant Motion for Summary Judgment. Def.'s Mot. Summ. J.

Following the resolution of several discovery disputes and supplemental briefing submitted to the Court by both parties, Defendant's Motion for Summary Judgment is now ripe

for the Court's ruling.  For the reasons set forth below, Defendant's motion is **GRANTED** as to all remaining claims.

## II.    STANDARD OF REVIEW

A court should grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  Factual disputes must be both *material* and *genuine* to defeat summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis added).  Materiality depends on the applicable substantive law; a fact is material if it may affect the outcome of the suit under the governing law.  *Id*. at 247–248.  A genuine dispute allows a reasonable jury to return a verdict for the nonmoving party.  *Id*. at 248.

When considering a motion for summary judgment the court must construe all evidence in the light most favorable to the nonmoving party.  *Santini v. Fuentes*, 795 3d 410, 416 (3d Cir. 2015).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets that burden, the nonmoving party must do more than merely rest on the allegations stated in her pleadings and must identify specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Garges v. People's Light & Theatre Co.*, 529 Fed. Appx. 156, 160 (3d Cir. 2013).  The court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The Court finds that Defendant met its burden of proving that there is no genuine issue of material fact. Further, Plaintiff has failed to identify specific facts showing that there is a genuine issue for trial.

## III. DISCUSSION

The Court will first explore the events giving rise to Plaintiff's pregnancy discrimination claims and analyze the evidence which corroborates Defendant's stated reason for terminating Plaintiff. The Court will then examine the evidence regarding Plaintiff's disability discrimination claim which does not sufficiently establish Plaintiff's purported disability.

### A. Pregnancy Discrimination

In Counts I and III, Plaintiff alleges discrimination and retaliation in violation of the PDA. Am. Compl. ¶¶ 104–128. The PDA prohibits discrimination "on the basis of pregnancy, child birth, or related medical conditions." Pregnancy Discrimination Act, Pub. L. No. 95-555, 92 Stat. 2076 (codified as amended at 42 U.S.C. § 2000e *et seq.* (1991)). The PDA contains two clauses. The first clause amends Title VII of the Civil Rights Act of 1964 ("Title VII"), providing that discrimination on the basis of "pregnancy, childbirth, or related medical conditions" is a form of unlawful sex discrimination. The second clause provides that "women affected by pregnancy, childbirth, or related medical conditions" have a right to be treated the same as those "not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). Courts analyze PDA claims as sex discrimination under Title VII. *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 752 (E.D. Pa. 2002).

Counts II and IV of Plaintiff's Complaint allege pregnancy discrimination and retaliation in violation of the PHRA. Am. Compl. ¶¶ 111–117, 129–134. The PHRA prohibits employers from discriminating based on the sex of an employee. 43 Pa. Cons. Stat. Ann. § 951 *et seq.* This

includes a prohibition on discrimination based on pregnancy. *Cerra v. East Stroudsburg Area Sch. Dist.*, 299 A.2d 277, 279–80 (Pa. 1973). When a plaintiff alleges violations of the PDA and PHRA, both claims are subject to the same Title VII analysis. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Smith v. Pathmark Stores, Inc.*, No. 97-1561, 1998 WL 309916, at *3 (E.D. Pa. June 11, 1998) ("Courts have uniformly interpreted the PHRA consistent with Title VII."). Accordingly, Plaintiff's pregnancy discrimination claim under the PHRA is properly analyzed under the same standard as her pregnancy discrimination claim under the PDA.

### 1. Burden-Shifting Framework

In analyzing a motion for summary judgment in a Title VII action, the court must follow the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* To establish a prima facie case of pregnancy discrimination a plaintiff must show: (1) she was pregnant, and her employer was aware of the pregnancy; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) there is a nexus between her pregnancy and the adverse employment action. *See Doe v. C.A.R.S Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir 2008).

Once a plaintiff establishes a prima facie case for pregnancy discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, the burden shifts back to the plaintiff to show that Defendant's stated reason is merely pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To defeat summary judgment, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an

invidious discriminatory reason was more likely than not a motivation or determinative cause of the employer's action." *Id.*

The Court focuses its analysis on whether the Defendant's given reason for terminating the Plaintiff is pretextual since Defendant has not challenged Plaintiff's prima facie case and the applicable analysis for whether a nexus exists between the pregnancy and the firing at the prima facie phase is similar to the analysis of whether the Defendant's given reason is pretextual. *Compare Abraham v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir. 2001) (stating that temporal proximity is sufficient to establish a causal link, or nexus for a prima facie case of discrimination), *with Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638–39 (3d Cir. 1993) (stating that timing of an employee's dismissal is relevant to the pretext inquiry).

### 2. Pretext

Plaintiff cannot point to specific evidence in the record that credibly casts doubt on Defendant's stated and documented legitimate, non-discriminatory reasons for terminating her employment.

 Defendant presented three legitimate, non-discriminatory reasons for terminating Plaintiff — all stemming from the events that occurred on March 24–30, 2010.  These events ultimately led to Plaintiff's suspension on March 31, 2010 and termination on April 1, 2010. Specifically, Defendant contends that it terminated Plaintiff because: (1) Plaintiff failed to properly perform her assigned duties on March 24, 2010; (2) Plaintiff walked off the job before the end of her shift on March 30; and (3) Plaintiff provided false information to her supervisor, Alpini between March 25–30.  Def.'s Mot. Summ. J. 41, ECF No. 65.

To support its version of events, Defendant appended a declaration and contemporaneous notes kept by Alpini.  Def.'s Mot. Summ. J., Ex. 2, Apps. R, S.  In addition to the March 2010

incidents leading up to Plaintiff's dismissal, Defendant cited performance evaluations and incident reports documenting instances in which Plaintiff was previously counseled for exhibiting behavior similar to that which Defendant claims led to her ultimate dismissal. Defendant cites incidents in which Plaintiff failed to follow department protocol when leaving the unit, properly clean equipment, and properly prepare for procedures. Def.'s Mot. Summ. J., Ex. 2, App. J. Defendant also cites Plaintiff's July 2008–2009 evaluation, in which her supervisor noted that Plaintiff "continuously fails to communicate with charge nurse [and] nurse manager effectively by reporting [when she] come[s] to [and] from the dep[artment]. She often leaves proc[edure] room [and] dep[artment] without notes to charge nurse. Improvement is needed in her communication with peers as well." Def.'s Mot. Summ. J., Ex. 2, App. J.

Plaintiff disputes the veracity of Defendant's stated reasons for her termination. Pl.'s Resp. 36, ECF No. 69. However, Plaintiff fails to point to any evidence that would allow a reasonable fact finder to disbelieve Defendant's stated reason for terminating her, or to believe that invidious discrimination more likely than not motivated the Defendant.

The Court will first examine the events on March 24, before analyzing evidence relevant to the events that occurred on March 25–30.

### a) March 24, 2010 Events

Defendant contends that on March 24, 2010, Plaintiff did not properly document the cleaning and sterilizing of equipment used in endoscopic procedures. Def.'s Mot. Summ. J. 13. The following day, two other endoscopic technicians alerted Alpini that the cleaning solution had failed testing and that there was no documented testing of the cleaning solution from March 24, when Plaintiff was responsible for the cleaning of the equipment. Def.'s Mot. Summ. J. 13. In response, Plaintiff contends that she was unable to document her cleaning of the equipment and

testing of the solution because she was reassigned by the charge nurse, Walker, to relieve a fellow technician. Pl.'s Resp. 39; Am. Compl. ¶ 94. Plaintiff further contends that she was reassigned to a procedure that exposed her to radiation. Pl.'s Resp. 39–40.

Defendant appended a declaration and contemporaneous notes from Alpini stating that Walker had not reassigned Plaintiff on March 24. Def.'s Mot. Summ. J, Ex. 2, App. R. Defendant further casts doubt on Plaintiff's contention by including signed declarations from Defendant's Senior Legal Counsel, its attorney of record, and Plaintiff's supervisor that all declare under penalty of perjury that they "reviewed every medical record for any and all fluoroscopic procedures performed from January 1, 2010 through March 31, 2010 in the endoscopy unit . . . . [and] confirmed that [Plaintiff] did not participate in any of the fluoroscopic procedures." Def.'s Mot. Summ J., Ex. 2 ¶ 19–23, Exs. 5, 6. Therefore, based on the business records, Plaintiff could not have been reassigned to a procedure that exposed her to radiation on March 24, 2010, as she claims.

Plaintiff can only point to her own statements made in depositions and declarations to support her assertions that Defendant's stated reason for terminating her are pretextual. Pl.'s Resp. 39–40. However, not even her own statements completely support Plaintiff's contentions. In a deposition taken on February 20, 2014, Plaintiff admits that she failed to document cleaning the equipment. Def.'s Mot. Summ. J. Ex. 1, Pl. Dep. 158: 8–18.

Plaintiff further contends that the lack of Alpini's contemporaneous documentation on March 24 regarding Plaintiff's improper equipment cleaning should lead to an inference in Plaintiff's favor. Pl.'s Resp. 40. However, the absence of contemporaneous notes on March 24, 2010 can hardly be viewed as favorable evidence for Plaintiff. In fact, it supports Defendant's version of events. Alpini states that she was not made aware of the dirty scopes and cleaning

solution until the following the day, March 25, 2010, which is supported by contemporaneous documentation. Def.'s Mot. Summ. J., Ex. 2, App. R. Defendant also has Alpini's notes from March 26, 30, and 31 which support its version of events. Def.'s Mot. Summ. J., Ex. 2, App. R.

Therefore, the Court finds that Defendant's first stated reason for terminating Plaintiff's employment — her failure to properly perform duties on March 24, 2010 — to not be pretextual. Plaintiff has not introduced any evidence that would allow a reasonable fact finder to disbelieve Defendant's stated reason, or to believe that invidious discrimination more likely than not motivated the Defendant.

### b) March 25–30, 2010 Events

Defendant contends that its two other reasons for terminating Plaintiff stem from events that occurred on March 25, 26, and 30. Def.'s Mot. Summ. J. 13–14. Specifically, on March 25, Defendant claims that Alpini called Plaintiff regarding the lack of cleaning documentation from the previous day. Based on contemporaneous notes kept by Alpini, Plaintiff stated during the phone call that she had placed the documentation in a binder. Def.'s Mot. Summ. J., Ex. 2, App. R.

On March 26, 2010, Defendant asserts that Alpini met with Plaintiff to follow up on the missing logs from March 24. Def.'s Mot. Summ. J., Ex. 2, App. R. According to Alpini's notes from that meeting, Plaintiff could not produce any documentation when asked to verify that she had tested, cleaned, and logged the equipment as required on March 24. Def.'s Mot. Summ. J., Ex. 2, App. R. It was only then, Defendant contends, that Plaintiff explained that she had been reassigned from the cleaning room to a procedure by the charge nurse on duty at the time, Walker. Def.'s Mot. Summ. J., Ex. 2, App. R.

According to Defendant's account, four days later on March 30, 2010, Alpini arranged a meeting with Walker and Plaintiff regarding the events from March 24. Def.'s Mot. Summ. J., Ex. 2, App. R. According to Alpini's notes from March 26 and March 30, Walker denied reassigning Defendant on March 24. Def.'s Mot. Summ. J., Ex. 2, Apps. R, S. Defendant claims that at the conclusion of the March 30 meeting, Plaintiff was told to go to Human Resources to discuss the hospital's accommodation policy, but instead left work early. Def.'s Mot. Summ. J., Ex. 2, App. S. Defendant relies on a sworn declaration from Alpini, Alpini's contemporaneous notes, deposition testimony from Plaintiff, and business records in supporting its version of events. Def.'s Mot. Summ. J., Ex. 2, App. S. Plaintiff, in response, points only to her own declarations and statements regarding the events of March 25–30.

Defendant claims that these events are the basis of its two other stated reasons for termination Plaintiff – (i) she walked off the job on March 30, 2010 and (ii) provided false information to her supervisor.

### i. Walking Off the Job March 30

Plaintiff contends that she did not leave work before the end of her shift without permission on March 30, 2010. Pl.'s Resp. 37. She instead contends that she was given permission to leave before the end of her shift by the charge nurse on duty at the time, LeBron. Am. Compl. ¶ 94, ECF No. 22. Defendant has documented the incident with contemporaneous notes kept by both Alpini and LeBron. Def.'s Mot. Summ. J., Ex. 2, App. T. Plaintiff is only able to point to her own assertions to rebut Defendant's account of her leaving before her shift ended without permission.

Even Plaintiff's own account changed regarding her visit to Human Resources on March 30. In her Response to Defendant's Motion for Summary Judgment, Plaintiff asserts, "[s]he met

with Randy [McLaughlin] late in the day on March 30, 2010 and Randy told [Plaintiff] he would schedule a meeting for the next day." Pl.'s Resp. 42. However, in Plaintiff's June 2, 2010 letter to the Pennsylvania Human Rights Commission, Plaintiff recounts her visit to Human Resources on March 30 differently. Pl.'s Resp., Ex. E. In that complaint, Plaintiff states "[a]fter seeing Human Resources were [sic] not available until the next morning, I went back to my work department." Pl.'s Resp., Ex. E. Unlike Plaintiff's account of events in her Response to Defendant's Motion for Summary Judgment, there is no mention of a meeting with Randy McLaughlin or anyone else in Human Resources in her account of events given to the Pennsylvania Human Rights Commission the day after being terminated. *See* Pl.'s Resp., Ex. E.

Plaintiff also contends that she asked the charge nurse on duty if she could leave when she returned to her work department on March 30. Am. Compl. ¶ 94. However, according to both LeBron and Alpini's notes, Plaintiff did not seek permission before leaving work early. Def.'s Mot. Summ. J., Ex. 2, Apps. S, T. Plaintiff contends that another nurse, Mattie Cooper, was a witness to her leaving at 5:50 PM. Pl.'s Resp., Ex. E. However, Plaintiff does not provide an affidavit from Cooper to verify her version of events. Finally, Plaintiff's own account concedes that she left work before the end of her shift. Am. Compl. ¶ 94. Defendant's belief that Plaintiff left before the end of her shift without explicit permission on March 30 is more credible considering prior documented instances in which Plaintiff left work before the end of her assigned shift without permission. *See, e.g.,* Def.'s Mot. Summ. J., Ex. 2, Apps. F, G, J, M, N.

As a result, the Court finds that the Plaintiff has not sufficiently identified evidence that would lead a reasonable fact finder to disbelieve that Defendant terminated Plaintiff, at least in part, due to its belief that Plaintiff walked off the job on March 30.

### ii. Providing False Information to Supervisor

Plaintiff also denies that she misrepresented facts to her supervisor regarding her failure to perform duties on March 24, 2010 or her visit to Human Resources and subsequent early departure from work on March 30. Pl.'s Resp. 41–42. However, Plaintiff is again unable to point to any evidence beyond her own statements to corroborate her version of events. During Plaintiff's deposition, when asked about the March 25 phone call from Alpini, Plaintiff remembered being called by Alpini but did not recall the substance of the call. Def.'s Mot. Summ. J., Ex. 1, Pl. Dep. Vol I 150:18–21. Plaintiff also did not recall the March 26 conversation with Alpini in which Defendant contends that Plaintiff could not produce documentation of properly recording the testing of the equipment cleaning solution. Def.'s Mot. Summ. J., Ex. 1, Pl. Dep. Vol I 150:18–21. Plaintiff's inability to recall the conversations does not effectively rebut the evidence presented by Defendant.

The Court finds that Plaintiff did not carry her burden of introducing any evidence that would allow a reasonable fact finder to disbelieve that the Defendant terminated her, at least in part, because it believed she made false statements to her supervisor. Defendant introduces contemporaneous notes from Alpini corroborating its account of Plaintiff's shifting narrative regarding the testing of the equipment. Furthermore, despite claiming to have additional witnesses, Plaintiff has failed to present any on the record. Plaintiff has introduced no evidence to effectively rebut Defendant's account of the March 30, 2010 events. In fact, Plaintiff concedes that she left work before the end of her shift.

Plaintiff has not met her burden of identifying specific evidence in the record which would allow a reasonable fact finder to disbelieve any of Defendant's stated reasons for

terminating her employment, or to believe that discrimination was more likely than not Defendant's motivation for terminating her employment.

### 3. Retaliation

Similar to other Title VII discrimination claims, a claim for pregnancy retaliation must be analyzed through the *McDonnell Douglas* burden shifting framework. To make a prima facie claim of retaliation, a plaintiff must prove that she: (1) engaged in a protected activity; (2) the defendant took adverse action against her; and (3) a causal link exists between the protected activity and the adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). The burden then shifts to the defendant to offer a legitimate, nonretaliatory reason for its adverse employment action. *Id.* at 342. If the defendant is able to do so, the plaintiff must provide specific evidence to convince the fact finder that the proffered reason is false, and that retaliation was the real reason for the adverse employment action. *Id.*

As explained above Section III.A.2, Plaintiff has not met her burden of identifying specific evidence in the record that would allow a reasonable fact finder to conclude that Defendant's stated reasons are pretext for discrimination. Defendant has provided statements and contemporaneous notes from multiple sources corroborating its account, while Plaintiff only relies on her own, inconsistent account. Therefore, Defendant's Motion for Summary Judgment is granted for Plaintiff's claim of pregnancy retaliation.

### B. Disability Discrimination

In Counts II and V of the Amended Complaint, Plaintiff alleges that Defendant unlawfully discriminated against her because of her disability, in violation of the Americans with Disabilities Act and the PHRA. Am. Compl. ¶ 25–33, ECF No. 22. The ADA prohibits employers from discriminating against qualified individuals with disabilities in job hiring, firing,

advancement, and other privileges of employment. Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (1990). Although the PHRA has not been amended to remain completely coextensive with the ADA, disability claims under the PHRA should be treated as coextensive with ADA claims. *Kelly*, 94 F.3d at 105.

Disability discrimination claims under the ADA and the PHRA are analyzed under the *McDonnell Douglas* burden shifting framework. *Hatch v. Franklin Co.*, 755 Fed. Appx. 194, 198 (3d Cir. 2018). To make out a prima facie case for discrimination, a plaintiff must establish that she: (1) has a disability as defined by the ADA; (2) was qualified for an employment position with or without a reasonable accommodation; and (3) suffered an adverse employment action because of her disability. *Id.* In this case, the Plaintiff has failed to establish that she was disabled for the purposes of the ADA.

A plaintiff has a "disability" for the purposes of the ADA if she (1) has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 CFR § 1630.2; *Kelly*, 94 F.3d at 105. Regulations clarifying what constitutes a disability under the ADA state that "major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia" substantially limit major life activities and should be considered disabilities. 29 C.F.R. § 1630.2(j)(1)(3)(iii).

Plaintiff claims to be disabled per se because of the depression, anxiety, and terror that she experienced. Pl.'s Resp. 46, ECF No. 69. Plaintiff also points to a January 12, 2010 prescription that she received for Wellbutrin, an antidepressant, in her attempt to establish that

she suffered from debilitating depression that substantially limited major life activities. Pl.'s Reply 28 n. 6, Ex. H, ECF No. 112.

Despite Plaintiff's attempt to establish that she was disabled when she was terminated by Defendant, evidence in the record does not support a finding that she was disabled for purposes of the ADA. There is no evidence in the record to suggest that Plaintiff suffered from a *major* depressive disorder. The record does not even establish that Plaintiff had been diagnosed as depressed at the time of her termination.

Plaintiff has no documented medical history of depression around the time of her termination by Defendant. To the contrary, medical records show that Plaintiff represented she did not have a history of depression on multiple occasions around the same time as her termination. *See e.g.*, Def.'s Sur-Reply, Ex. 1, ECF No. 119. For example, Plaintiff's medical records from January 2010 indicate that she has no medical history of depression. Def.'s Sur-Reply, Ex. 1, JUP 001 (marking 0 next to "depression/postpartum depression" on a questionnaire). Her medical records from March 2010 indicate that she has no past medical history of psychiatric issues. Def. Sur-Reply., Ex. 1, Women for Women 18 (marking none next to past medical psychiatric history). Furthermore, Plaintiff's medical records from August 2010 indicate that she suffered from some prior ailments, but conspicuously Plaintiff did not indicate having any history with anxiety or depression. Def.'s Sur-Reply, Ex. 1, MLH 0113 (choosing other past medical problems, but not circling depression). In addition, during a March 21, 2014 deposition, Plaintiff claimed that she began to feel depression that precluded her from taking care of her son sometime *after* she was terminated from Defendant. Def.'s Sur-Reply, Ex. 2, Pl. Dep. at Vol. II, 29:15-24 (emphasis added).

Plaintiff points to a prescription she received for Wellbutrin, an antidepressant, as evidence that she had a clinically cognizable depressive disorder.[1]  Pl.'s Reply, Ex. H.  However, Plaintiff's medical records suggest that her doctor prescribed her the drug to help Plaintiff stop smoking.[2]  Def.'s Sur-Reply, Ex. 1.  In a February 20, 2014 deposition, Plaintiff acknowledges that she was indeed prescribed the medication to help her stop smoking.  *See* Def.'s Sur-Reply, Ex. 2, Pl. Depo. Vol. I 245:11–23.

Defendant also had Dr. Fenichel, a clinical psychiatrist, evaluate Plaintiff.  Def.'s Mot. Summ. J, Ex. 9.  Dr. Fenichel concluded that, "[Plaintiff] has not suffered from an emotional or mental condition or emotional or mental distress caused by employer's suspension and termination of her employment or any conduct by her employer during any time of her employment."  Def.'s Mot. Summ. J, Ex. 9.  Plaintiff has introduced no evidence to rebut this evaluation.

The Court finds that Plaintiff has failed to establish a prima facie case of discrimination under the ADA because Plaintiff cannot provide any evidence of a disability that is cognizable under the ADA.  Therefore, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs claims of discrimination under the ADA.

---

[1] Plaintiff's prescription was ultimately filled with Budeprion XL 150MG.  This medication is also an antidepressant, but as its label indicates, "may also be used for other conditions as determined by your doctor."

[2] Under "problems" the doctor wrote "smoking" and then under he "medication list" the doctor prescribed Wellbutrin. *See* Def.'s Sur-Reply, Ex. 1, JUP 0003.  The prescription was ultimately filled with Budeprion XL 150 MG, which can also be used to reduce cravings to smoke.  *See* Pl.'s Reply, Ex. H.; Budeprion XL Side Effects Center, RXlist.com, last edited 1/6/2017, available online at https://www.rxlist.com/budeprion-xl-side-effects-drug-center.htm#overview.

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Judgment is entered in favor of Defendant for all remaining claims.  An appropriate order follows.